# Richmond

### JAMES A. RUETT v. PAGE FRANKLIN NOTTINGHAM, JR., AN INFANT WHO SUES BY PAGE FRANKLIN NOTTINGHAM, SR., HIS FATHER AND NEXT FRIEND.

March 16, 1959.

Record No. 4899.

Present, All the Justices.

The opinion states the case.

*W. C. Pender* (*Pender & Coward*, on brief), for the plaintiff in error.

*Macie V. Marlowe*, for the defendant in error.

I'ANSON, J., delivered the opinion of the court.

This suit was instituted by Page Franklin Nottingham, Jr., an infant who sues by Page Franklin Nottingham, Sr., his father and next friend, hereinafter referred to as the plaintiff, to recover damages for injuries sustained when he fell from an automobile while riding as a guest in the car operated by James A. Ruett, hereinafter referred to as the defendant. The jury returned a verdict for the plaintiff in the amount of $2,500.00, and the trial court entered judgment thereon. To this judgment we granted a writ of error and supersedeas.

The defendant's assignments of error may be summarized as follows: (1) That the court erred in not setting aside the verdict of the jury and entering judgment in his favor on the ground that there was no evidence of gross negligence on the part of the defendant, and (2) that the court erred in granting certain instructions offered by the plaintiff.

The principal question involved is: whether the evidence was sufficient to make out a case of gross negligence under the guest doctrine prevailing in this State. Sec. 8-646.1, Code of 1950.

Since the plaintiff obtained a judgment in the lower court, the evidence will be stated in the light most favorable to him.

The defendant for some time had been in the habit of taking, as an accommodation, the plaintiff, aged six, and plaintiff's sister, aged twelve, children of a close friend, to school each morning as he drove to work. Usually both children rode in the back seat of the defendant's automobile.

The car was a 1939 Plymouth. The doors locked from inside by lifting the handles and opened by pushing them down. The locks were in good condition and working effectively. A motor company representative examined the locks and presented a statement in evidence to the effect that he found no need of correction or adjustment on the door latches.

At about 8:30 on the morning of October 3, 1957, the defendant, pursuant to his custom, drove to plaintiff's home and blew his horn to call the children. They were ready and waiting and their mother sent them out, watching from the window as they got in the car, closed the door and started off on their way to school.

The defendant had reached over the front seat and opened the right rear door for the children to get in. The girl let the boy get in first, and seeing the defendant's laundry on the seat, she opened the door to the front seat and got in with the defendant. She closed the front door and the plaintiff closed the rear door.

The trip started on 20th Street about a block west of Granby Street in the city of Norfolk, Virginia. The defendant made a left turn off 20th Street into Granby and traveled a little over a mile to the scene of the accident. During the trip from plaintiff's home to the scene of the accident the right rear door, according to the plaintiff's sister, seemed "perfectly closed and perfectly tight, but I wasn't listening." At no time during the trip was there any indication that the door was not properly closed.

The defendant stated he was "in a little bit of a hurry to get to work," but there was no evidence of excessive speed.

Upon reaching the neighborhood of the school the defendant noticed that a bus was stopped in the right travel lane at the southeast corner of Granby and Thole Streets, with passengers either getting on or off. The defendant was traveling in the middle lane of the three north-bound lanes, moving toward the northeast corner of Granby and Thole Streets where the children were to alight. According to the statement of the plaintiff's sister the defendant "swerved in front of the bus and straightened out suddenly" when making his right turn. There was no evidence to indicate such a "swerve" caused her to move in her seat or that the automobile was traveling at more than a normal speed for such a right turn. After the defendant had made the turn and straightened out he heard a noise caused by the plaintiff falling, or in some other manner emerging, from the right rear door of the automobile. The point of the fall was in the middle of Thole Street, or just one-half the width of Thole Street from the point where defendant planned to stop completely and to let the children alight from the car.

There was evidence that the defendant gave his undivided attention to driving the automobile and did not look to the back seat to supervise the plaintiff, but that he did hear noises made by the plaintiff pulling the grab rope on the back of the seat and snapping it.

The plaintiff, by counsel, concedes that although he is a minor this fact does not take the case out of the gross negligence rule existing in this State or relax the necessity of establishing gross negligence. *Richards* v. *Parks*, 19 Tenn. App. 615, 93 S. W. 2d 639, 643; *Langford* v. *Rogers*, 278 Mich. 310, 270 N. W. 692. See also 60 C. J. S., Motor Vehicles, § 399 (5), p. 1017, and 4 Blashfield on Cyclopedia of Automobile Law and Practice, Part 1, Perm. Ed., § 2351, p. 486. He asserts, however, that a high degree of care is required of the defendant since the plaintiff, a child of six years of

age, was riding alone in the back seat of the car and that the defendant was guilty of several acts of negligence which when "taken together combine or add up to create a package of negligence of such size or gravity as to come within the term gross, that is, wanton, disregarding personal rights, shocking to reasonable men's conscience." He relies on the following facts: (1) permitting the child to ride alone in the back seat of the automobile; (2) the condition of the locks; (3) failure to check the door after closing; (4) failure to lock the door; (5) failure to supervise; and (6) the negligent operation of the automobile.

The degree of care owed a child is proportionate to the apparent ability of the child in view of his age, maturity and intelligence to foresee and avoid the perils which may be encountered, if those perils are such as have become apparent to or should have been discovered by the operator of a motor vehicle in the exercise of ordinary care under all the circumstances. The younger the child and the less able to look out for himself the greater the care which may reasonably be expected of the motorist. *Conrad* v. *Taylor*, 197 Va. 188, 191, 89 S. E. 2d 40, 42. This degree of care required of the operator of a motor vehicle to his guest who is a minor, however, does not relieve the injured minor from the necessity of proving gross negligence in order to recover for his injuries.

In *Hershman* v. *Payne*, 196 Va. 241, 83 S. E. 2d 418, Mr. Justice Miller reviewed our decisions dealing with the degree of negligence necessary to constitute gross negligence in guest cases. In summation he said, at 196 Va. p. 245, 83 S. E. 2d 420, "In the final analysis and weighing of the evidence, the question is not what or how many statutory violations can be said to have been established or how many acts of negligence have been proved. One act of simple negligence may violate several statutes. The decisive legal question is: Did Hershman's conduct, his acts of omission and commission, show such utter disregard of prudence as to constitute total indifference and complete disregard of the safety of his guest?" See also *Doerr* v. *Barnes*, 198 Va. 306, 94 S. E. 2d 271.

Did the combined acts of omission or commission proved by the plaintiff constitute such conduct on the part of the defendant as to "show such utter disregard of prudence as to constitute total indifference and complete disregard of the safety of his guest?"

The plaintiff, with his parents' consent, had on many occasions ridden in the back seat of the defendant's automobile in company with

his sister. He had no doubt opened or closed the door many times. On the morning of the accident the plaintiff's mother had watched from the window when he got in the back seat of the car and had seen the door closed. The presence of the twelve-year-old sister in the back seat with him would not have been an assurance that he would not have opened the door. It is a matter of common knowledge that many parents with four-door sedan automobiles permit their children to ride in the back seats of their cars. The riding of the plaintiff alone in the back seat of the automobile did not create the probability that the child would open the door and fall out of the automobile while it was in motion. At most it could have been only a possibility for which the defendant could not be held responsible under the circumstances.

The testimony of a witness from Green-Gifford Motor Company was that he had made an inspection of the door latches on the automobile and that he had found no need for their correction or adjustment.

There was nothing to indicate the necessity of checking the door after its closing by the plaintiff. The defendant had made a left turn off 20th Street into Granby, and if the door had not been securely fastened it would have either opened or rattled. Neither occurred. The plaintiff's sister stated that the door was perfectly closed and perfectly tight.

The failure of the defendant to lock the door did not contribute to the accident since it was securely fastened. Pushing the door handle up to lock it could give no greater protection. The locked door could be opened by merely pushing down on the handle.

The defendant's duty required him to give attention to operation of the automobile. For effective supervision it would have been necessary for the defendant to act at the very instant he was busy maneuvering the car to the curb.

There is no evidence that the defendant operated the automobile at an excessive speed at any time during the trip, nor particularly when he made a right turn at the corner of Granby and Thole Streets to get to the curbing for the purpose of discharging his guests. The use of the word "swerve" by the plaintiff's sister could have meant a normal right-hand turn, since the evidence is silent as to speed, and nothing appears from her testimony that the act of making the turn caused her to move her position in the seat. The defendant testified that the right-hand turn at the corner was a normal one.

From all of the acts complained of by the plaintiff it cannot be said that the defendant violated any statutory duty to the plaintiff. Defendant's acts were not, collectively nor singularly, a proximate cause of the injury to the plaintiff, nor do they "show such utter disregard of prudence as to constitute total indifference and complete disregard to the safety of" the plaintiff.

For the foregoing reasons, we are of opinion to reverse the judgment of the trial court and enter final judgment for the defendant, James A. Ruett.

*Reversed and final judgment.*